**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CRIMINAL NO.  1:08CR85**


| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| ) | |
| **VS.** ) | **MEMORANDUM AND** |
| ) | **O R D E R** |
| ) | |
| **ANTHONY JOSEPH ALLISON** ) | |
| _____ ) | |


**THIS MATTER** is before the Court on Defendant's motion to

suppress which is opposed by the Government.  For the reasons set out

below, Defendant's motion is denied.


## I.  BACKGROUND

On August 5, 2008, the Defendant was charged with the unlawful

possession of a firearm by a convicted felon, in violation of 18 U.S.C. §

922(g)(1).  *See* **Indictment, filed August 5, 2008.**  After his arraignment,

Defendant filed a motion to suppress with supporting memorandum.

**Motion to Suppress Evidence and Supporting Memorandum, filed**

**October 22, 2008.**  The Government responded to Defendant's motion.

**Government's Opposition to Defendant's Motion to Suppress Evidence, filed October 24, 2008.** The Court conducted a hearing on the Defendant's motion on October 27, 2008, at which time evidence was taken and arguments of counsel were presented. At the conclusion of the proceedings, the Court advised the Government and Defendant that the motion to suppress would be denied and a formal order setting forth the Court's findings and conclusions would be entered. Defendant then entered a conditional plea of guilty to the one count indictment preserving his right to appeal the denial of his motion to suppress.

## II. FINDINGS OF FACT

The testimony and evidence presented at the hearing revealed the following. Sergeant John Hamrick of the Shelby Police Department testified that on January 11, 2008, he was on routine patrol with the Street Crimes Unit in a marked police cruiser along with fellow Shelby Police Officer Brandon Carpenter. Hamrick observed an individual driving a Ford Explorer traveling in the opposite direction of the patrol car and noted that the driver appeared to be an individual by the name of Zavious Wells, whom he believed to have an outstanding warrant for a probation violation.

Hamrick testified that he made a decision to investigate the vehicle and made a three point turn in order to follow the Explorer; however, he did not activate his siren or lights. After initially losing sight of the Explorer for five to ten seconds, Hamrick regained visual contact when he observed the Explorer turning into and parking in a driveway. Hamrick then pulled into the same driveway and parked, but at no time did he activate the lights or siren of the patrol car.

Hamrick further testified that after Defendant and the driver exited the Explorer, they began walking towards the officers who were then exiting the patrol car. As the driver of the Explorer drew closer to Hamrick, he recognized him not as Wells, but as Victor Jerome Wade. Hamrick testified that in 2005 he had charged Wade with a driving offense and had reason to believe that he did not currently have a valid driver's license. Hamrick asked Wade if he had a license, and Wade replied that he did not. Hamrick testified he confirmed this with police communications and then issued Wade a citation for driving without a license. Hamrick testified he did not place Wade under arrest although he could have properly done so under North Carolina law.

Hamrick further testified that Officer Carpenter asked Wade if he could search the Explorer. Wade replied that he did not own the vehicle, therefore, he could not consent to the search of the vehicle. Hamrick testified that he recognized the Defendant and knew the Defendant had previously been convicted in state court of a weapons offense and had been recently released from jail. Hamrick stated that as a precaution, Carpenter performed a pat down search of the Defendant and found no weapon on his person. Although Wade declined to provide consent to search the vehicle, Hamrick testified that Officers Carpenter and Watson, who had recently arrived on the scene, conducted a "Terry" frisk of the Explorer to insure no weapons were immediately within reach of either Wade, the Defendant, or the group of people then assembling around the Explorer. During this brief search, the officers located a handgun under the passenger seat and the Defendant was placed under arrest. Hamrick testified that the officers never asked Defendant for his permission to search the Explorer. After the Defendant was taken into custody, a state search warrant was obtained to allow a search of Defendant's cell phone. The search revealed pictures on the cell phone that showed Defendant holding a gun that looked similar to the gun found in the Explorer.

Defendant testified at the suppression hearing that the Explorer was owned by Wade's girlfriend and that they were parked in the driveway to pay her a short visit. Defendant testified that he did not know the patrol car had turned around to follow the Explorer and he did not even notice the patrol car until he and Wade had exited the Explorer after parking in the girlfriend's driveway. Defendant testified that at no time did any of the officers draw their weapons or tell him that he was not free to leave prior to the discovery of the weapon; however, he did not feel that he was free to leave because he believed the officers might draw their weapons on him. Defendant testified that he had previous state convictions for common law robbery, conspiracy to commit armed robbery, felony attempted larceny, and possession of a firearm by a felon. He testified that based on his previous arrests, he knew when an officer made it clear that he was not free to leave, but the officers here did not take any such action.

## III. DISCUSSION

Defendant contends the stop of the Explorer was unlawful and cites *Brendlin v. California*, 127 S. Ct. 2400 (2007), in support of his claim that as a passenger he has standing to contest the traffic stop and, therefore,

the recovery of the pistol that led to his arrest. **Defendant's Memorandum, at 1.** The Government responds that there was no traffic stop and further that Defendant has no standing to contest the search of a car that did not belong to him, that he was not driving, and that he had voluntarily exited. **Government's Opposition, at 3.**

In *Brendlin*, the Supreme Court considered the question of whether a passenger is seized within the meaning of the Fourth Amendment when a police officer makes a traffic stop of a vehicle in which they are traveling. Answering the question in the affirmative, the Court held that a "person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, 'by means of physical force or show of authority,' terminates or restrains his freedom of movement[.]" **Brendlin, 127 S. Ct. at 2405 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).** The threshold issue in the instant case is whether the Explorer was stopped and whether Defendant was seized at all. If not, then *Brendlin* is inapplicable and its holding can provide Defendant no support in challenging the recovery of the weapon.

Defendant's testimony at the hearing demonstrates he had no knowledge the police followed the Explorer to the driveway where Wade

parked the vehicle.  In fact, Defendant testified he did not see the police car until he and Wade had come to a complete stop in the driveway and were exiting the vehicle.  These facts show that Wade voluntarily stopped the Explorer in the driveway, an action in which the police played no role. Based on the foregoing findings of fact, the Court concludes that there was no stop of the Explorer within the meaning of the Fourth Amendment, therefore, *Brendlin* is inapplicable to the present case.

The remaining issue for consideration is whether Defendant may properly challenge the search of the Explorer; a vehicle he did not own, was not driving, and in which he was no longer a passenger.  On this issue, the Supreme Court has held that the "proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." ***Rakas v. Illinois*, 439 U.S. 128, 132 n.1 (1978)**.  In *Rakas*, the defendants were charged with armed robbery after a vehicle in which they were passengers was stopped by the police.  A search of the vehicle yielded a sawed-off rifle and rifle shells.  The defendants were placed under arrest and before trial moved to suppress the rifle and shells that were seized following the search of the vehicle.  ***Id*. at 129-30.**  The defendants admitted they were

not owners of the vehicle and asserted no ownership of the rifle or the shells. *Id*. **at 130.** In rejecting the defendant's arguments and upholding the denial of the motion to suppress, the Court concluded that defendants "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized." *Id.* **at 148.**

Returning to the present case, the Court finds that Defendant admitted that he had only been a passenger in the Explorer and did not own the vehicle. Defendant did not assert any ownership interest in the vehicle. The Court further finds that Defendant never claimed an ownership interest in the gun recovered under the front passenger seat. **Motion to Suppress,** *supra*, **at 2 (Defendant "denied responsibility or ownership of the firearm.").** Based on the foregoing, the Court concludes that the facts found in *Rakas* are similar to facts here. Therefore, pursuant to *Rakas*, Defendant's motion to suppress must be denied.

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's motion to suppress is **DENIED**.

9

Signed: November 12, 2008

Lacy H. Thornburg
United States District Judge